UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------X
P.A.C. CONSOLIDATORS LTD, et al.,

                        **MEMORANDUM & ORDER**

           Plaintiffs,

                        10 CV 1981 (JBW)

- against -

UNITED CARGO SYSTEMS INC., et al.,

           Defendants.
-----------------------------------------------------X

On May 12, 2011, defendants David Wu, Pauline Huang, and United Cargo Systems, Inc., ("the UCS defendants"[1]) filed a motion seeking (1) to allow defendants to assert third-party claims against two individuals, and (2) to disqualify Richard Migliacccio, Esq. and Joel Scott Ray, Esq. from representing defendants Donna Loren LLC and Jump Shot Sportswear ("the DL-JS defendants") in this action.[2] On June 24, 2011, the Court Ordered the UCS defendants to supplement their briefing by providing to the Court a proposed third-party Complaint. On July 5, 2011, the UCS defendants submitted a proposed third-party Complaint. After considering the parties' submissions, the Court denies the UCS defendants' motion to assert third-party claims.

## FACTUAL BACKGROUND

Plaintiff PAC Consolidators Ltd. ("PAC") is a freight forwarder operating from Hong

---

[1] Although the Court refers to these defendants as "the UCS defendants," there has been no request by three of the named corporate defendants to file a Third-Party Complaint.

[2] The Court addresses only the motion to allow the UCS defendants to assert third-party claims against two individuals. The UCS defendants' motion to disqualify Mr. Migliaccio and Mr. Ray will be addressed in an Order to follow.

Kong, responsible for arranging international ocean and air transport of freight. (Compl.[3] ¶¶ 3, 4). Under Federal Maritime Commission regulations, PAC was not licensed to act as a Non-Vessel Operating Common Carrier ("NVOCC") and could not directly offer its services to entities in the United States. (Id. ¶¶ 53, 54).

On or about July 2, 2003, defendant United Cargo Service Inc. ("UCS-3"), a New York entity, approached PAC and expressed an interest in developing a freight forwarding relationship for shipments between the United States and Hong Kong. (Id. ¶¶ 12, 56). At that time, UCS-3 represented that it was a subsidiary of U C S Group Inc. ("UCS-1"), another freight forwarding entity doing business in New York. (Id. ¶¶ 22-26, 27, 57). Based on these various representations, on July 23, 2003, PAC entered into an agency agreement with UCS-3, in which they agreed to cooperate with each other in the freight forwarding business. (Id. ¶ 59). Unbeknownst to PAC, however, both UCS-1 and UCS-3 had been dissolved in June 1996 and in 2002, respectively, for failure to pay taxes. (Id. ¶¶ 25, 61).

According to plaintiffs, UCS-1 and UCS-3 are owned and operated by defendants David Wu and Pauline Huang. (Id. ¶¶ 32, 33). In addition to UCS-1 and UCS-3, plaintiffs allege that defendants Wu and Huang also operate United Cargo System Inc. ("UCS-2"), United Cargo Systems, Inc. ("UCS-4"), and United Customs Services, Inc. ("UCS-5"), all allegedly freight forwarders doing business in New York. (Id. ¶¶ 32-35). UCS-2 was allegedly dissolved in 1993 for failure to pay taxes. (Id. ¶ 19). In January 2007, UCS-3 informed PAC that they would be using the name of a new company, "United Cargo Systems, Inc." ("UCS-4"), but that UCS-3

---

[3]Citations to "Compl." refer to the plaintiffs' Amended Complaint, filed April 29, 2011.

would still be used for local brokerage services in the United States. (Pls.' 56.1 Stmnt[4] ¶ 14).

Defendants Donna Loren and Jump Shot ("DL-JS") are New York corporations, allegedly engaged in the business of purchasing, importing and selling garments. (Compl. ¶¶ 42, 43, 44, 45). According to the Complaint, DL-JS were owned and operated by Isaac Assa and Salim Assa, and both were freight fowarding customers of the UCS entities. (Id. ¶¶ 49, 50, 52, 66). In 2007, DL-JS agreed to purchase garments from Jaygee Industrial Limited ("Jaygee"), a Hong Kong corporation. (Id. ¶ 66). The terms of the sale required that the goods be released to the buyer only against cash payment. (Id. ¶¶ 131-134, 136; Pls.' 56.1 Stmnt ¶ 40). DL-JS, which was responsible for arranging the transport of the goods from Jaygee in Hong Kong to the United States, contracted with the UCS entities which in turn arranged the ocean transport of the goods through PAC and its non-vessel operating common carrier, PAC Ocean Lines Ltd. (Compl. ¶¶ 67-68).

Jaygee tendered the garments to PAC in Hong Kong and received the requisite Bills of Lading, listing the consignee as CIT Commercial Services, a bank, in order to ensure that they received payment before delivery. (Id. ¶¶ 68-70, Ex. B). However, according to plaintiffs, the goods were released by the UCS entities to DL-JS and not to CIT, and they were released without presentment of the original Bills of Lading and without payment to Jaygee. (Id. ¶¶ 74-77, 131-134; Pls.' 56.1 Stmnt ¶¶ 18-29).

Thereafter, on February 1, 2008, Jaygee filed an action in Hong Kong seeking damages from PAC in the amount of $308,913.04, with interest and costs, based on breach of contract,

---

[4]Citations to "Pls.' 56.1 Stmnt" refer to Plaintiffs' Rule 56.1 Statement of Material Facts, which was filed on March 25, 2011.

3

bailment and negligence claims. (Compl. ¶¶ 78, 79). Despite notice to the UCS entities regarding the suit and their obligation to indemnify PAC, the UCS entities failed to cooperate, failed to submit to arbitration and failed to indemnify PAC. (Id. ¶¶ 82, 83, 85, 94).

Plaintiffs commenced this action against UCS-1, UCS-2, UCS-3, UCS-4, Wu, Huang, and DL-JS defendants, seeking to recover the amounts paid in settlement of the Hong Kong action. On April 29, 2011, plaintiffs amended their Complaint to add UCS-5 as a defendant. UCS-5 has not answered or responded to the Complaint at this time, pending a resolution of the motion to disqualify counsel.

Currently before the Court is a motion by all defendants to assert third-party claims against Isaac Assa and Salim Assa, "the individual owners" of DL-JS, alleging indemnification, contribution, contributory negligence, fraud and unjust enrichment. Defendants DL-JS contend that there is no basis to hold the Assas liable individually and that the motion is designed solely "to harass, hold them open to public humiliation and is intended as a litigation strategy to force settlement and other concessions." (DL-JS Let.[5] at 4).

## DISCUSSION

Rule 14 of the Federal Rules of Civil Procedure governs the impleader of third parties. Rule 14(a)(1) states that a defendant and "third-party plaintiff must obtain the court's leave if it files the third-party complaint more than 14 days after serving its original answer." Fed. R. Civ. P. 14(a)(1).

---

[5]Citations to "DL-JS Let." refer to the letter filed by the DL-JS defendants on June 7, 2011.

4

1) <u>UCS-5's Right to File a Third Party Action</u>

In arguing that the Court should grant the motion, the UCS defendants contend that the newly added defendant – United Cargo Services Inc. (UCS-5) – "can add them as of right." (UCS Defs.' Let.[6] at 2). Although the UCS defendants do not expound upon this argument, since UCS-5 was only added as a defendant in this action by Amended Complaint filed on April 29, 2011, and no answer has yet been filed because of the pending motion for disqualification, under the Rule, UCS-5 would have the right to file a third party complaint at the time of the filing of the answer. Fed. R. Civ. P. 14(a)(1). However, since UCS-5 has not formally appeared in this matter, nor has an attorney filed a Notice of Appearance on its behalf, the possibility that UCS-5 might file such a third party complaint is speculative and the Court declines to consider statements from defendants' counsel with respect to the substance of UCS-5's litigation strategy. Particularly since corporations may not appear in a federal action without counsel, see, e.g., Grace v. Bank Leumi Trust Co. of N.Y., 443 F.3d 180, 192 (2d Cir. 2006), this Court is in no position to predict what action UCS-5 will take or whether it will be represented by current counsel.

Accordingly, in considering the motion to implead the Assas as third-party defendants, the Court has not considered the potential that UCS-5 might bring such claims, and instead considers the motion as brought by the other UCS defendants.

2) <u>The Motion to Implead by the Remaining UCS Defendants</u>

In considering the motion brought by the remaining UCS defendants, the Court notes that

---

[6]Citations to "UCS Defs.' Let." refer to the letter motion filed by the UCS defendants on May 12, 2011.

"'the right to implead third parties is not automatic, and the decision whether to permit impleader rests within the sound discretion of the district court.'" Falcone v. MarineMax, Inc., 659 F. Supp. 2d 394, 401-02 (E.D.N.Y. 2009) (quoting Consolidated Rail Corp. v. Metz, 115 F.R.D. 216, 218 (S.D.N.Y. 1987)). When considering a motion for leave to implead, "a district court considers: '(1) whether the movant deliberately delayed or was derelict in filing the motion; (2) whether impleading would delay or unduly complicate the trial; (3) whether impleading would prejudice the plaintiff or third-party defendant; and (4) whether the proposed third-party complaint states a claim upon which relief can be granted." United States ex rel. Ryan v. Staten Island Univ. Hosp., No. 04 CV 2483, 2011 WL 1841795, at *9 (E.D.N.Y. May 13, 2011) (quoting Greene v. City of N.Y., No. 08 CV 243, 2010 WL 1936224, at *2 (E.D.N.Y. May 12, 2010)).

Turning to the first factor – the question of delay – "[t]he defendant[s] bear[] the burden of showing excuse for the delay." In re Agent Orange Product Liability Litig., 100 F.R.D. 778, 781 (E.D.N.Y. 1984). In this case, plaintiff filed the initial Complaint on May 3, 2010, and defendants Pauline Wang and United Cargo Systems, Inc., both represented by the moving attorney, filed an Answer on June 1, 2010. Although the Answer included claims against DL-JS, the Assas were not named nor were there any claims asserted against them. The plaintiffs' Amended Complaint was filed on April 29, 2011, and the motion for leave to implead the Assas was filed shortly thereafter, on May 12, 2011. Although the UCS defendants do not directly address the reason for the delay, it appears that they relied at least in part on information in the Amended Complaint in their decision to attempt to implead the Assas: "Isaac Assa and Salim

6

Assa, as confirmed by Plaintiffs in their Amended Complaint, are operating Defendants Donna Loren and Jump Shop [*sic*] as alter egos and mere instrumentalities." (UCS Defs.' Let. at 2). Accordingly, it appears that this factor weighs in favor of granting the motion.

The Court next considers whether allowing the moving party to implead third-party defendants would unduly delay or complicate the trial. The UCS defendants also argue that "Plaintiffs have already made the essential allegations (against the Assas) involving their personal responsibility for their corporations' [*sic*] in their Complaint," so plaintiffs will not be prejudiced by impleader. Moreover, the UCS defendants appear to argue that the third-party defendants will not be prejudiced, as "the Assas are well aware of our contribution/ indemnification claims as they appear as cross claims against their companies in my clients' original answer."[7] (Id. at 2). Accordingly, the second and third factors appear to weigh in favor of granting the motion.

The substantial area of disagreement between the parties is the fourth factor – namely, whether the proposed Third-Party Complaint states a claim on which relief can be granted. DL-JS contend that they are "prepared to present to the Court a pre-answer motion to dismiss once service is made and are prepared to prove abuse of process/malicious prosecution for such tactic." (DL-JS Let. at 4-5). The DL-JS defendants further assert that most of the causes of action in the Complaint are not applicable to the proposed third-party defendants, including the fourth and sixth claims for relief, which "are currently the subject of [a] Rule 12b motion for failure to plead fraud and breach of fiduciary duty." (Id. at 5). Therefore, they argue, "[t]he only

---

[7]The Court notes that while Donna Loren and Jump Shot appear in the UCS defendants' cross-claims, neither of the Assas is mentioned.

7

basis in law to add the Assa Brothers is through piercing the corporate veil theory [*sic*]," and piercing the corporate veil "requires more than mere allegations as plead [*sic*] in the Amended Complaint by Plaintiffs." (Id.) The UCS defendants appear to agree that the basis for their claims against the Assas relies on piercing the corporate veil and they dedicate a significant portion of their Reply letter to arguing that they have pleaded sufficient facts to justify piercing the corporate veil.

"Generally . . . piercing the corporate veil requires a showing that: (1) the owners exercised complete domination over the corporation in respect to the transaction attacked; and (2) that such domination was used to commit a fraud or wrong against the plaintiff which resulted in plaintiff's injury." Morris v. N.Y. State Dep't of Tax. & Fin., 82 N.Y.2d 135, 141, 603 N.Y.S.2d 807, 810-11, 623 N.E.2d 1157, 1160-61 (1993). "The party seeking to pierce the corporate veil must establish that the owners, through their domination, abused the privilege of doing business in the corporate form to perpetrate a wrong or injustice against that party such that a court in equity will intervene." Id. at 142, 603 N.Y.S.2d at 811, 623 N.E.2d at 1161.

When determining whether the corporate veil should be pierced, "[t]he determinative factor is whether 'the corporation is a dummy for its individual stockholders who are in reality carrying on the business in their personal capacities for purely personal rather than corporate ends.'" @Wireless Enterprises, Inc. v. AI Consulting, LLC, No. 05 CV 6176, 2011 WL 1871214, at *7 (W.D.N.Y. May 16, 2011) (quoting Port Chester Elec. Const. Co. v. Atlas, 40 N.Y.2d 652, 656, 389 N.Y.S.2d 327, 331 (1976)). "New York courts will pierce the corporate veil only 'when the [corporate] form has been used to achieve fraud, or when the corporation has been so

dominated by an individual . . . that it primarily transacted the dominator's business rather than its own and can be called the other's alter ego.'" Apex Maritime Co., Inc. v. OHM Enterprises, Inc., No. 10 Civ. 8119, 2011 WL 1226377, at *2 (S.D.N.Y. Mar. 31, 2011) (quoting Gartner v. Snyder, 607 F.2d 582, 586 (2d Cir. 1979)).

"[C]ourts [may] look to a variety of factors, including the intermingling of corporate and personal funds, undercapitalization of the corporation, failure to observe corporate formalities such as the maintenance of separate books and records, failure to pay dividends, insolvency at the time of a transaction, siphoning off of funds by the dominant shareholder, and the inactivity of other officers and directors." Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc., 98 F.3d 13, 18 (2d Cir. 1996). However, "there is no mechanical rule as to how many and to what degree the factors . . . must be present to pierce the corporate veil." Id.

The DL-JS defendants argue that the UCS defendants "only assert the conclusory allegation that Donna Loren, LLC and Jump Shot Sportswear, LLC are mere instrumentalities of the Assa Brothers," and that there "are no other facts to support how the Corporations were mere instrumentalities, such as undercapitalization, or abuse of the corporate form." (DL-JS Supp. Let. at 2). In other words, the UCS defendants "fail to . . . present factual allegations that the Assa Brothers completely dominated the corporations and that such domination caused injury" to them. (Id.)

In their Reply letter, the UCS defendants contend that "[t]he relevant decisions made on behalf of Co-Defendant corporations are made by Isaac Assa and/or Salim Assa,"[8] and those

---

[8]Although the UCS defendants allege in the proposed Third-Party Complaint that DL-JS were "controlled and dominated" by the Assas, the proposed Third-Party Complaint does not

9

individuals were the ones the UCS defendants "dealt with when entering into any and all transactions between the parties." (Reply[9] at 3). Moreover, the Third-Party Complaint alleges that the Assas held positions of authority within the corporations. "As a result, it is only through discovery that it can be determined how extensively Isaac Assa and Salim Assa dominated Donna Loren, LLC and Jump Shot Sportswear, Inc. and made decisions causing the Plaintiff's losses as contained in the Amended Complaint." (Id.)

"[T]he proper pleading standard for piercing the corporate veil . . . [is] a 'knotty question.'" Apex Maritime Co., Inc. v. OHM Enterprises, Inc., 2011 WL 1226377, at *2 (quoting EED Holdings, Inc. v. Palmer Johnson Acquisition Corp., 228 F.R.D. 508, 512 (S.D.N.Y. 2005)). "To avoid dismissal, a party . . . must come forward with factual allegations as to both elements of the veil-piercing claim." EED Holdings, Inc. v. Palmer Johnson Acquisition Corp., 228 F.R.D. at 512. "Where the veil-piercing claims are not based on allegations of fraud, the liberal 'notice pleading' standard of Rule 8(a) applies." In re Currency Conversion Fee Antitrust Litigation, 265 F. Supp. 2d 385, 425 (S.D.N.Y. 2003). "However, when a veil-piercing claim is based on allegations of fraud, the heightened pleading standard of Rule 9(b) is the lens through which those allegation[s] must be examined." Apex Maritime Co., Inc. v. OHM Enterprises, Inc., 2011 WL 1226377, at *2 n.33 (quoting EED Holdings, Inc. v. Palmer Johnson Acquisition Corp., 228 F.R.D. at 512).

---

contain more specific allegations, such as that all relevant decisions on behalf of the corporations were made by the Assas. See discussion infra at 11-12.

[9]Citations to "Reply" refer to the UCS defendants' letter in reply, which was filed on July 13, 2011.

"Purely conclusory allegations cannot suffice to state a claim based on veil-piercing or alter-ego liability, even under the liberal notice pleading standard." Aspace Commc'ns, Ltd. v. Burke, 522 F. Supp. 2d 509, 521 (W.D.N.Y. 2007) (internal quotations omitted). "The mere claim that the corporation was dominated by the defendants . . . without more, will not suffice to support the equitable relief of piercing the corporate veil." Apex Maritime Co., Inc. v. OHM Enterprises, Inc., 2011 WL 1226377, at *4 (quoting Damianos Realty Group, LLC v. Fracchia, 35 A.D.3d 344 (2d Dep't 2006)).

After reviewing the proposed Third-Party Complaint, the Court has determined that the UCS defendants have failed to adequately plead facts sufficient to pierce the corporate veil. The allegations in the proposed Third-Party Complaint are merely conclusory statements that the Assas exercised dominion over the corporations. The only relevant facts alleged by the UCS defendants are as follows: "defendants Isaac Assa and Salim Assa are the principals of DONNA LOREN LLC ("DONNA LOREN") . . . and JUMP SHOT SPORTSWEAR, INC. ("JUMP SHOT") . . . ." (Prop. Compl.[10] ¶¶ 7-9). The proposed Third-Party Complaint also alleges that Donna Loren and Jump Shot were "corporate alter egos of each other" as well as the Assas. (Id. ¶¶ 11-12). In addition, the proposed Third-Party Complaint alleges that "DONNA LOREN and JUMP SHOT are controlled and dominated by Isaac Assa and Salim Assa." (Id. ¶ 13). The UCS defendants further allege that "Isaac and Salim Assa, acting individually or jointly through their corporations which are mere instrumentalities of themselves . . . took possession of, assumed control of, or arranged release and delivery of garments . . . ." (Id. ¶ 32).

---

[10]Citations to "Prop. Compl." refer to the proposed third-party Complaint, which was filed on July 5, 2011.

The proposed Third-Party Complaint is devoid of any specific facts supporting the alter ego claim–for example, that the Assas ignored corporate formalities, intermingled corporate and personal funds, or engaged in any of the other activities normally associated with an analysis of alter ego, such as failing to maintain corporate records, failing to maintain separate bank accounts, failing to pay corporate taxes, issue stock or elect directors. The Third-Party Complaint similarly fails to allege any facts in support of the conclusion that the Assas exercised complete dominion over the corporations. There is no allegation that the companies shared owners, principals, office space, office equipment, telephone and email addresses, websites or customers. Indeed, there is nothing in the Third-Party Complaint beyond boilerplate allegations that make the UCS defendants' veil piercing claim plausible. Even the plaintiffs' Amended Complaint contains more information about the related nature of DL and JS and the Assas. (See, e.g., Compl. ¶¶ 46-48, 49-50) (alleging that DL-JS shared principals, officers, directors, management, employees, office space, office equipment, agents and customers, and that DL-JS were "mere instrumentalities of principals Isaac Assa and Salim Asssa," that the Assas "dominated and controlled" DL-JS for "their personal gain" and that DL-JS were "alter egos of principals Isaac Assa and Salim Assa"). Given that the allegations in the proposed Third-Party Complaint fail to give fair notice to the Assas as to what the basis for piercing the veil might be, the Court finds the proposed Third-Party Complaint does not state a plausible claim upon which relief can be granted.

Accordingly, defendants' motion for leave to file the proposed Third-Party Complaint is denied, without prejudice. If defendants can amend their pleadings to include sufficient factual

allegations to state a claim for relief and wish to renew their request to file a Third-Party Complaint, they may do so by August 1, 2011.

**SO ORDERED.**

Dated: Brooklyn, New York
July 25, 2011

Cheryl L. Pollak
United States Magistrate Judge
Eastern District of New York